**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| ASHLEY OATESS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO.: 1:26-cv-00136-HAB-ALT |
| v. | ) |
| | ) |
| MISSISSINEWA COMMUNITY SCHOOL | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

Plaintiff alleges against Defendant as follows:

1. Plaintiff is Ashley Oatess, a qualified employee who performed within the reasonable expectations of her employers at all times material to this Complaint. Plaintiff contends that she was discriminated against on the basis of her disability, in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), retaliated against her for utilizing time off work pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and suffered defamation pursuant to the laws and public policies of the State of Indiana .

2. Defendant is Mississinewa Community School Corporation, doing business at 424 East South "A" Street, Gas City, IN 46933. Defendant is an "employers" for the purposes of the ADA and the FMLA.

3. Plaintiff sent a Tort Claim Notice to Defendant and the Indiana Political Subdivision Risk Management Commission as well as the Mississinewa

Community School Corporation on November 14, 2024, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. 1."

4. With regard to the ADA claim, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 4, 2024, a copy of which is attached hereto, incorporated herein, and made a part hereof as "Ex. 2." The EEOC issued the Notice of Right to Sue on December 9, 2025, a copy of which is attached hereto as "Ex. 3". All jurisdiction prerequisites have been met, and all administrative remedies are being exhausted for the filing of this Complaint.

5. Plaintiff worked for Defendant from on or around April 2015, until her wrongful termination on or about August 19, 2024. At the time of termination Plaintiff's job title was "Janitor."

6. In August 2023, Plaintiff requested FMLA due to a medical condition that caused Plaintiff to experience severe migraine headaches. At the time that Plaintiff requested FMLA her doctor did not know the cause of the migraine headaches. The doctor reported on Plaintiff's FMLA paperwork that Plaintiff was expected to be incapacitated for more than three consecutive, full calendar days and was not able to perform any job-related function because of "migraine and seizure like activity."

7. During Plaintiff's FMLA leave, Plaintiff had a series of tests which ruled out tumors, blood clots and seizures. Plaintiff was prescribed multiple different medications, but none worked to relieve the migraine headaches. At the time that

Plaintiff's FMLA leave was due to expire, Plaintiff was still incapacitated by her medical condition and unable to return to work.

8. As part of its employment agreement, Defendant offers its employees an unpaid leave of absence program. On or around January 8, 2024, Defendant granted an unpaid leave to Plaintiff that would be in effect until August 18, 2024. Defendant informed Plaintiff that she was scheduled to return to work on August 19, 2024, and that she would have to submit a doctor's note in order to return to work.

9. During the period of her leave, Plaintiff was referred to two different specialists and attempted several treatments.

10. On or about July 12, 2024, Plaintiff underwent a spinal tap. A doctor drained fluid from Plaintiff's spine to relieve pressure and to obtain spinal fluid for testing. Plaintiff started a new medication at this time. After the spinal tap, Plaintiff noticed immediate relief from her migraine symptoms.

11. On July 23, 2024, Defendant notified Plaintiff that she was scheduled to return to work on August 19, 2024, and reminded Plaintiff that she would need a medical note to return to work.

12. On July 30, 2024, Plaintiff informed Defendant that she planned to return to work and had a doctor's appointment in the middle of August to receive the results from recent tests and that she would be able to get a note at that appointment.

13. At the appointment on August 15, 2024, Plaintiff requested and received a note from her doctor stating that Plaintiff was "okay to return to work on Monday, August 19." The note included a restriction "lifting as tolerated up to 40- lb."

14. On August 16, 2024, Plaintiff took the doctor's note to her supervisor, Ted Gosser. Mr. Gosser looked at the note and told Plaintiff that he would "get back with her." When Plaintiff asked if she should be at work at 8 AM on Monday, Mr. Gosser replied that he would let her know because he had to give the note to Jill, meaning Jill Townsend. Plaintiff felt that the interaction was odd.

15. Twenty minutes after leaving Mr. Gosser's office, Plaintiff received a call from Jill Townsend. Ms. Townsend stated that she was concerned about the weight restriction of 40 pounds and that the doctor's note did not have a date. Plaintiff told Ms. Townsend that the weight restriction would only be in place for a short amount of time. Plaintiff offered to call the doctor's office to ask for a note with a date. Jill Townsend stated that it was "too late" because Plaintiff had already turned in her note. Jill Townsend then stated that Mr. Gosser would contact Plaintiff to get her keys. When Plaintiff asked what Ms. Townsend meant, Ms. Townsend stated that Plaintiff was terminated. Plaintiff asked if there was any way that she could speak to the Superintendent and Ms. Townsend stated that he was not available.

16. After speaking with Ms. Townsend, Plaintiff sent an email to the Superintendent, Jeremy Fewell, and said that she would like to talk to him about an urgent matter. Mr. Fewell responded that he would be available at 10:30AM.

17. When Plaintiff entered the administration building, Mr. Jared Lucky met her in the hallway and told her that she needed to leave. Plaintiff responded that she had a meeting with the Superintendent. Mr. Lucky said she would have to wait outside

and escorted her out of the building. Plaintiff stood outside until Mr. Lucky allowed her back into the building and escorted her to Mr. Fewell's office.

18. Mr. Fewell informed Plaintiff that she had been terminated. He said that the termination was because her doctor's note had no date and because the doctor had included a weight restriction. Plaintiff informed Mr. Fewell that she wanted her job back and that she thought it was wrong that she was being terminated. Plaintiff asked Mr. Fewell to work with her. Mr. Fewell told Plaintiff that he would try to get it sorted out.

19. After leaving Mr. Fewell's office, Plaintiff called her doctor's office and left a message. Later that afternoon, Plaintiff reached a nurse. Plaintiff asked the nurse to fax a new note with a date and a time limit for the weight restriction to Mr. Fewell. A nurse faxed a note to Defendant that afternoon. The second note had a date and set a time limit of two weeks for the weight restriction.

20. On the morning of August 19, 2024, Plaintiff did not hear if Defendant had received the second note. Plaintiff drove to her doctor's office and was given a third note that included the date and a 40-pound weight restriction for 1 week. The doctor wrote that the weight restriction was in place to allow Plaintiff to "re-acclimate" to her position. Plaintiff delivered this note to Mr. Fewell in person that same day. After looking at the note, Mr. Fewell asked Plaintiff about seizures. Plaintiff told Mr. Fewell that she had never been diagnosed with seizures. Plaintiff asked if she should get another note that said she had been cleared of seizures. Mr. Fewell said no.

21. Mr. Fewell suggested that Plaintiff could submit a letter of resignation which would allow her to apply for a different position with the district, possibly as a bus driver. Plaintiff told Mr. Fewell that she would not resign. She told Mr. Fewell that she wanted her job back and said specifically that her position had benefits.

22. When Plaintiff left Mr. Fewell's office she believed that Mr. Fewell might help her keep her job, but, when Mr. Fewell called her later in the day, he said that Plaintiff had been added to the agenda of the school board meeting taking place that night. Mr. Fewell said that the school board would be voting on a recommendation to terminate her employment contract. Mr. Fewell again told Plaintiff that she could resign and would then be eligible for re-hire within the school.

23. On the evening of August 19, 2024, Mississinewa Community School Corporation Board of Trustees voted to terminate Plaintiff's contract for employment.

24. On the morning of August 20, 2024, Mr. Gosser called Plaintiff and asked for her keys. Later that morning, Mr. Fewell called Plaintiff and left a voicemail stating that she had been terminated. In the voicemail, Mr. Fewell told Plaintiff that she was eligible to apply for other positions. Mr. Fewell then sent Plaintiff a letter which stated, falsely, that he had "asked to meet" with Plaintiff on August 19, 2024, "to discuss the new medical information, (your) work related restrictions

and (your) need for accommodation." Mr. Fewell's letter also included the false information that Plaintiff's long-term leave of absence was prompted by seizures.

25. Mr. Fewell made further false statements in the letter, stating that Plaintiff chose to be terminated rather than resign her position voluntarily, as this choice would allow Plaintiff "to continue to receive disability income benefits" and to "receive unemployment benefits." Plaintiff had actually communicated to Mr. Fewell that she would not resign because she did not believe that what Defendant was doing to her was right and because she wanted to keep her job because the position had benefits. Mr. Fewell ended his letter with the suggestion that Plaintiff could seek "another position with the School Corporation that may better accommodate your circumstances."

26. By information and belief, the false statements contained in the letter were also communicated by Mr. Fewell to the Mississinewa Community School Corporation Board of Trustees and precipitated her termination.

27. Defendant's failure to engage in the interactive process and decision to terminate Plaintiff was discriminatory and was the direct and proximate cause of Plaintiff suffering the loss of her job- and job-related benefits, including income, and resulted in emotional distress, humiliation, and other damages and injuries.

28. In addition to the discriminatory treatment, Plaintiff was subjected to defamation that resulted in the loss of her job and job-related benefits, including income. Plaintiff is entitled to compensatory damages including reasonable attorney fees and costs.

29. Plaintiff further alleges she was retaliated against for utilizing the FMLA to tend to her own serious medical condition, and the retaliation was the direct and proximate cause of Plaintiff suffering the loss of her job- and job-related benefits, including income, entitling her to seek compensatory damages including reasonable attorney fees and costs.

30. Further, Defendant's discriminatory and/or retaliatory actions were intentional, knowing, willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, warranting an imposition of punitive and/or liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, punitive damages, liquidated damages, reasonable attorney fees and costs, and for all other just and proper relief.

**JURY DEMAND**

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**CLOSE & HITCHCOCK, LLC**

/s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 300
Fort Wayne, IN 46802
Telephone: (260) 408-6818
Facsimile: (260) 498-2655
E-mail: Jennifer@closehitchcock.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Robert T. Keen
Carta H. Robison
Barrett McNagny
215 East Berry Street
Fort Wayne, IN 46802
rtk@barrettlaw.com
chr@barrettlaw.com
*Attorneys for Defendants*

/s/Jennifer L. Hitchcock